### In re Burma Jean MARTIN.

### No. 4:95–BK–42745E.

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

Jan. 15, 2003.

---

Burma Jean Martin, pro se, James Clawson, Keith L. Grayson, Little Rock, AR, for debtor.

Richard L. Cox, Hot Springs, AR, trustee.

David Powell, Little Rock, AR, for Richard L. Cox.

Jim Simpson, Little Rock, AR, for James F. Dowden.

## ORDER

AUDREY R. EVANS, Bankruptcy Judge.

Now before the Court is the Debtor's Petition requesting authority to pursue a Pulaski County Circuit Court case against certain parties including Trustee Richard L. Cox and Richard L. Cox, P.A. ("**the Trustee**"), and the Trustee's attorney, James F. Dowden and James F. Dowden, P.A. ("**Dowden**") and Dowden's former law firm, Eichenbaum, Liles & Heister, P.A. Also pending before the Court is the Debtor's "Motion to Set Aside 3/13/98 Order and Agreed Judgment." In response to Debtor's motions, the Trustee and Dowden moved for sanctions to deter the Debtor from continuing to abuse the judicial process by repeatedly filing the same motions.

These matters came on for hearing on October 28, 2002. The Debtor appeared *pro se.* David Powell, Esq. appeared on behalf of the Trustee. James Simpson, Esq. appeared on behalf of Dowden. After hearing arguments from Debtor and counsel, the Court took the matters under advisement.[1] Following the hearing, Debtor filed an additional "Motion to Correct and Clarify Order" asking the Court to correct or clarify the March 13, 1998 order which is the subject of Debtor's motion to set aside. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b). This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule of Procedure 7052.

## FACTS

The Debtor, Burma Jean Martin, filed a chapter 7 petition in bankruptcy on September 20, 1995. The Trustee was appointed chapter 7 trustee of the Debtor's bankruptcy estate the same day. At the time Debtor filed bankruptcy, she was involved in two Texas lawsuits, the "**Goodstein lawsuit**" and the "**Sanford lawsuit.**" Debtor contends that she only filed the chapter 7 bankruptcy to have these lawsuits removed to the bankruptcy court. When the lawsuits were not transferred to the bankruptcy court, Debtor moved to dismiss her chapter 7 case.[2] The Debtor

---

1. Debtor has filed a memorandum with the Court asking the Court to reconsider her Motion to Set Aside 3/13/98 Order. Although the Court did not orally rule on Debtor's Motion to Set Aside 3/13/98 Order at the October 28, 2002 hearing, the Court did express an unwillingness to reconsider issues that had been previously decided by the Court and affirmed by the Bankruptcy Appellate Panel. Debtor also makes a new request in her memorandum in asking to be allowed to rescind a settlement agreement she previously executed as an injured party to a contract where one party has defaulted on a material issue. Because Debtor has not filed this request in the form of a motion, the Court will not consider this request. Furthermore, the Court notes that the findings in this Order will preclude any further consideration of either the "Settlement Agreement" or the "Compromise Settlement Agreement," and the Debtor will be ordered to show cause why she should not be sanctioned if she raises these issues again before this Court.

2. Debtor also attempted to claim these lawsuits as exempt assets under her wild-card exemption, but the Trustee's objections to her claimed exemption were sustained and upheld on appeal. *See In re Martin*, 205 B.R. 145 (Bankr.E.D.Ark.) (1997); *Martin v. Cox*, 213 B.R. 574 (E.D.Ark.1997). However, the Eighth Circuit Court of Appeals found that the Debtor could claim a wild-card exemption even though she claimed no homestead exemption, and the case was remanded to the bankruptcy court for further proceedings. *See In re Martin*, 140 F.3d 806 (8th Cir.1998). A hearing was set for July 7, 1998, on the Trustee's objections, but the Debtor did not appear. Consequently, the Trustee's objections were sustained by order entered July 9, 1998. At the hearing on October 28, 2002,

was unsuccessful in having her case dismissed, and she subsequently moved to convert her case to a case under chapter 13. That motion was also denied and the Court's ruling was upheld on appeal.[3] *See In re Martin*, 116 F.3d 480 (8th Cir.1997) (unpublished); *Martin v. Cox*, 213 B.R. 571 (E.D.Ark.1996). The Debtor was denied a discharge on March 6, 1998, following entry of the Court's order granting a complaint filed by the Trustee objecting to Debtor's discharge, and her case was closed October 7, 1999. However, prior to the closing of her case, much litigation ensued, a great deal of which concerned the Texas lawsuits and the property she had allegedly transferred to her parents after filing a chapter 13 bankruptcy case in Texas.[4] Relevant to this case are (1) the settlement of the Sanford lawsuit; and (2) the settlement of an adversary proceeding filed by the Trustee against Debtor, her parents and certain creditors; and (3) the Debtor's subsequent collateral attacks on the bankruptcy court order approving the Sanford lawsuit settlement (the "3–13–98 Order").

### The Sanford Lawsuit

Before Debtor filed bankruptcy, she was sued by her former attorney, Barnett Goodstein, for legal fees (the "**Goodstein lawsuit**"). A judgment was entered in Goodstein's favor, and Debtor hired attorney Brian P. Sanford to file a motion for a new trial in that case.[5] When Debtor refused to pay Sanford's legal fees, Sanford sued her and was awarded approximately $13,763.00 on summary judgment in a Texas state court. To collect his judgment, Sanford executed on seven parcels of real property he believed to be owned by Debtor. However, Debtor had allegedly deeded these parcels of real property to her parents, John and Hazel Martin, while she was a debtor in a chapter 13 bankruptcy in Texas. Her parents had not yet filed the deeds to the property but did so following Sanford's execution. Sanford then filed a fraudulent transfer lawsuit against Debtor which was later removed to the United States District Court for the Northern District of Texas, Dallas Division (hereinafter referred to as the "**Sanford lawsuit**"). Debtor and her parents countersued Sanford for illegal foreclosure. Debtor's counsel subsequently withdrew from representing her in that case, and Debtor filed the chapter 7 bankruptcy in Arkansas in order to remove that suit as well as the Goodstein lawsuit to the bankruptcy court in Arkansas.

and in her most recent memorandum filed with the Court, Debtor claims that she was unaware of the Eighth Circuit's ruling in her favor *"regarding her interest in the litigations"* until early 2002 because the Trustee and Dowden informed her that she had lost on appeal. The Court can only assume that she is referring to the Eighth Circuit's ruling on her exemptions because that is the only time the Eighth Circuit ruled in her favor. However, because Debtor fails to articulate what this has to do with the current motions before the Court and the Court finds no rationale connection, this issue is not addressed in this opinion.

3. The Honorable Mary Davies Scott presided over Debtor's case until her retirement in early 2002; Judge Scott decided all motions referred to in this Order.

4. A review of the published cases related to this bankruptcy can be found at *In re Martin*, 271 B.R. 333, 334 n. 2 (8th Cir. BAP 2002).

5. Goodstein's judgment was reversed on appeal and remanded to the trial court; there, Goodstein filed a motion for summary judgment which was pending at the time Debtor filed for relief under chapter 7 in Arkansas. The Trustee settled the lawsuit with Goodstein, and the Court entered an order approving that settlement on April 23, 1997. The Court's approval of the settlement was subsequently upheld on appeal. *See In re Martin*, 212 B.R. 316 (8th Cir. BAP 1997).

### Settlement of the Sanford Lawsuit

During the pendency of the Debtor's bankruptcy case, the Trustee and Sanford reached a settlement concerning the Sanford lawsuit. On November 7, 1996, the Trustee filed a "Motion for Approval of Compromise and Settlement with Brian P. Sanford, P.C." in the bankruptcy case. A "Compromise Settlement Agreement" executed by the Trustee and Sanford was attached to the motion as Exhibit "A." The proposed Agreed Judgment to be entered in the Sanford lawsuit in Texas District Court was attached to the Compromise Settlement Agreement as Exhibit "B" and incorporated into the agreement by reference. The Debtor's parents, John and Hazel Martin, who were parties to the Sanford lawsuit, filed a response to the Trustee's motion and supporting brief through their attorney, Michael Knollmeyer, on November 18, 1996. The Debtor filed an objection to the Trustee's motion through her attorney, Keith Grayson, on November 27, 1996. Mr. Grayson requested permission to withdraw as the Debtor's counsel on November 27, 1996, and Debtor subsequently filed a supporting brief to her objection *pro se* on December 2, 1996.

On February 26, 1997, the Court entered an order regarding the Martin's response to the Trustee's motion. Debtor contends that this order did not overrule her parents' objection to the Compromise Settlement Agreement and that the order "denied" the Trustee's motion to approve the settlement agreement. In fact, the order provided as follows:

> ORDERED that, to the extent the "Response to Trustee's Motion for Approval of Settlement with Brian Sanford" filed on November 18, 1997, by John and Hazel Martin constitutes an objection to the settlement, ***that objection is overruled***. It is clarified, however, that the proposed settlement does not settle any rights as between John and Hazel Martin and Brian P. Sanford in the case *Brian P. Sanford, P.C. v. Martin*, No. 393–145–CV (N.D.Tex.).

*See In re Martin*, 1997 WL 160435 (Bankr. E.D.Ark.1997) (emphasis added). The Court noted that the Debtor's objection to the Trustee's proposed settlement was pending, and that until it was ruled on, the Court could not approve the proposed settlement. *Id.* at *2, fn. 1. Accordingly, the Martins' objection to the Compromise Settlement Agreement was in fact overruled, and the Trustee's motion to approve the Compromise Settlement Agreement was neither granted nor denied, but continued until the Debtor's objection could be heard or settled. The Court's statement regarding the Martins' rights merely clarified that the Compromise Settlement Agreement was between Sanford and the Trustee, not the Martins, and that the settlement does not in fact affect the Martins' rights in the lawsuit. On March 13, 1998, the Court entered an agreed order approving the Trustee's proposed settlement which was signed by the Debtor (referred to in this Order as the "**3–13–98 Order**"). The text of the 3–13–98 Order, which is the source of Debtor's complaints and the subject of this litigation (as well as prior motions filed by the Debtor), is set forth below.

> On November 7, 1996, the Trustee filed his Motion for Approval of Compromise and Settlement with Brian P. Sanford, P.C. Two (2) objections were filed to the motion. An objection filed by John and Hazel Martin was overruled and denied by order of this Court on February 26, 1997. The Debtor filed her "Objection to Compromise Settlement" on or about November 27, 1996. By affixing her signature to this order,

Burma Jean Martin hereby withdraws said objection to compromise settlement.

There being no further objections to be heard, the Court hereby

**ORDERS, CONSIDERS, DECREES AND ADJUDGES**, that the Trustee's Motion for Approval of Compromise and Settlement with Brian P. Sanford, P.C. is hereby **approved**.

The 3–13–98 Order reflects that the Debtor signed it. Debtor maintains that she merely signed a blank page as directed by her parents' attorney, Michael Knollmeyer, and did not realize what she was signing. She maintains that she believed she was signing a different settlement agreement that was executed by herself, her parents and their attorney, the Trustee's attorney, and the other parties to an adversary proceeding filed by the Trustee. This settlement agreement is discussed below.

### Settlement of Adversary Proceeding Number 97–ap–4034

On February 24, 1997, the Trustee filed an adversary proceeding against Debtor, her parents and two creditors, Happy Traders Inc. and National Bank of Arkansas. The Trustee filed the adversary proceeding seeking permission to sell a piece of real property in which all the parties had an interest (the **"Cedar Creek property"**). The parties subsequently reached a settlement in which the Martins would pay the Trustee $15,000.00, and in exchange, the Martins would receive all of the estate's interest in the Cedar Creek property as well as three of the Texas properties the Trustee was to receive in the Sanford lawsuit under the settlement he had reached with Sanford (*i.e.*, the "Compromise Settlement Agreement" approved by the Court on March 13, 1998). The Settlement Agreement also provided that the Trustee would provide John and Hazel Martin with quitclaim deeds to the Cedar Creek property and three Texas proper-

ties obtained by the Trustee in the Sanford lawsuit settlement. On January 12, 1998, the Trustee filed a "Motion for Notice of Compromise Settlement" in the adversary proceeding with a "Settlement Agreement" attached as Exhibit "A" and an "Addendum to Settlement Agreement" attached as Exhibit "B". Paragraph 2 of this Settlement Agreement states:

> That Burma Jean Martin shall, and hereby does, withdraw her *objection to the proposed settlement between the trustee and Mr. Sanford*. A motion to approve the settlement was filed by the trustee on November 7, 1996. Burma Jean Martin approves of that settlement and asks that the Court approve it.

Paragraph 6 of the Settlement Agreement states:

> That John Paul and Hazel Victoria Martin enter into the settlement agreement as a result of trustee's doubtful and disputed claims and for the purpose of buying their peace. Nothing in this agreement shall be construed as an admission by John Paul and Hazel Victoria Martin that Burma Jean Martin, the trustee or Mr. Sanford had any rights to the properties which the trustee is quitclaiming to John Paul and Hazel Victoria Martin. John Paul and Hazel Victoria Martin retain all rights which they had to all of the Texas properties prior to this settlement.

(Emphasis added.) The Court has emphasized the language in the Settlement Agreement to show that the agreement specifically refers to the Compromise Settlement Agreement filed for approval in the case-in-chief. The Settlement Agreement was signed by all the parties to the adversary proceeding, including John and Hazel Martin, Mr. Knollmeyer as their attorney, and the Debtor. The Settlement Agreement also included a release of any

claims and causes of actions which John and Hazel Martin may have against the Trustee, his attorneys, agents and employees, and a release by the Trustee of any claims or causes of action he may have against the Martins. The Addendum to Settlement Agreement which contained a similar release between the Trustee, Dowden and Debtor was also signed by the Debtor. In the Addendum to Settlement Agreement, Debtor released the Trustee, Dowden or Dowden's law firm from "any and all claims causes of actions, existing or which may ever be brought against them." By order entered on March 25, 1998, the Court approved the Settlement Agreement.

### Debtor's Collateral Attacks on the 3–13–98 Order

Debtor first attacked the 3–13–98 Order approving the Sanford settlement on October 22, 1998 by filing a motion to reopen her bankruptcy case requesting that the Court "set aside the terms of the *Compromise* [Settlement] *Agreement* not in compliance with this Court's order, correct the March 13, 1998 order, reinstate debtor's objection to the compromise agreement, set aside John Paul and Hazel Victoria Martin's and the debtor's agreement not to sue the trustee and grant such other relief as this Court deems just and proper." The grounds asserted by Debtor for relief were that (1) the Trustee wrongfully executed the Compromise Settlement Agreement and Agreed Judgment which stipulated fraud against Debtor and set aside the transfers of real estate from Debtor to her parents in violation of the Court's February 27, 1997 order regarding the Martins' objections to the proposed Compromise Settlement Agreement (which overruled the Martins' objections but clarified that the Compromise Settlement Agreement did not settle issues between the Martins and Sanford), and (2) the Trustee wrongfully confessed a $150,000 judgment against her personally in the Agreed Judgment. On November 20, 1998, the Court denied Debtor's motion to reopen, finding that the case had never been closed and that there was accordingly no justiciable controversy to be decided by the Court. The Court went on to find that the Debtor's motion to set aside the 3–13–98 Order was untimely and misstated facts in the record. The Court also noted that because Debtor agreed to the 3–13–98 Order which expressly reflected her consent, her later regret and the consequences resulting from the entry of that order were not grounds to set aside the order.

Debtor attacked the 3–13–98 Order again on September 21, 2001, by filing a "Motion for Relief and Reconsideration of this Court's 3–13–98 Order" in which the Debtor alleged that the order was void due to extrinsic fraud because her signature was fraudulently obtained by Sanford and the Trustee. Debtor also alleged that Sanford and the Trustee fraudulently represented to the Court that the Compromise Settlement Agreement was the true and accurate settlement between the parties. The following day, the Debtor filed a "Motion for Injunction of the Court's 3–13–98 Order" because Sanford was executing upon Debtor's property to collect the judgment entered in Texas District Court as a result of the 3–13–98 Order which approved the Compromise Settlement Agreement and Agreed Judgment. Treating the Debtor's motion as a motion for relief from order under Federal Rule of Civil Procedure 60(b)(6), the catch-all provision for relief from an order, which is made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 9024, the Court denied Debtor's motion finding that Debtor's motion was untimely and lacked merit in that Debtor failed to plead sufficient allegations of fraud on the

court. *See In re Martin,* 268 B.R. 168. Specifically, the Court found that as a matter of law, the Debtor's allegation of fraud did not constitute fraud upon the court, and that in any case, the Debtor's motion was untimely because it was brought more than three years after the 3–13–98 Order had been entered.[6] The Court's order was subsequently upheld on appeal by the Eighth Circuit's Bankruptcy Appellate Panel. *See Martin v. Cox (In re Martin),* 271 B.R. 333 (2002). In that opinion, the BAP noted Debtor's numerous attacks on the 3–13–98 Order stating, "[t]he allegations made in her motion are not new and are simply rehashes of arguments made in other proceedings to a number of different courts." *Id.* at 335. Debtor subsequently appealed to the Eighth Circuit Court of Appeals, but her appeal was dismissed for failure to prosecute on May 7, 2002, when Debtor failed to respond to an order to show cause entered April 9, 2002.

Debtor currently has two motions pending before the court requesting relief from the 3–13–98 Order: (1) her Motion to Set Aside 3/13/98 Order and Agreed Judgment heard on October 28, 2002, and (2) her Motion to Correct and Clarify Order filed on November 6, 2002.

### Debtor's Lawsuits Against the Trustee, His Attorneys and Others

Debtor and her parents, John and Hazel Martin, previously filed a lawsuit in United States District Court, Eastern District of Arkansas, against the Trustee, Dowden, Dowden's law firm and the other parties they seek to sue in state court. That lawsuit alleged that the defendants were guilty of fraud, breach of fiduciary duty, breach of contract and negligence but was dismissed without prejudice for lack of subject matter jurisdiction. *See Martin v. U.S. Trustee,* 2001 WL 1563154 (8th Cir. 2001) (affirming District Court's dismissal) (not designated for publication). Debtor subsequently filed a lawsuit against substantially the same parties in Pulaski County Circuit Court on or around May 15, 2002, alleging the same grounds for relief. A review of the complaint filed in state court reveals that Debtor is once again alleging that Trustee Cox, Dowden and Sanford wrongfully obtained approval of the Compromise Settlement Agreement and Agreed Judgment. Debtor also complains about the settlement of the Goodstein lawsuit, the Trustee's objections to various motions filed by Debtor in her bankruptcy case, and the Trustee's overall administration of her bankruptcy estate.[7]

6. *Motions for relief from an order that are premised on Rule 60(b)(1)–(3) which includes fraud must be brought within one year of the entry of the order. The "fraud on the court" standard is distinct from the more general fraud standard of Rule 60(b)(3), and may be brought at any time. However, while there is no strict time limitation for filing a motion alleging fraud on the court, such a motion must be brought within a reasonable time. See In re Martin,* 268 B.R. at 171.

7. A specific allegation made by Debtor is that the Trustee failed to collect rents and properly manage the Texas properties; the Court notes that under the Settlement Agreement, the Trustee agreed to transfer the four properties to Debtor's parents in which the estate had an interest. Sanford obtained title to the three remaining properties under the Compromise Settlement Agreement and Agreed Judgment. Accordingly, there is no property the Trustee should be managing. Additionally, the Debtor also contends that the Trustee and Dowden have violated the Settlement Agreement because they never provided her parents with original deeds to the properties to be transferred to her parents under the Settlement Agreement. However, the Trustee maintains that original quitclaim deeds were provided to the Martins, but that he agrees to provide new ones if they need them. Additionally, Debtor previously filed a motion with the Court asking the Court to enforce the Settlement Agreement by ordering the Trustee and Sanford to deliver title to certain real proper-

## DISCUSSION

### A. *Motion to Set Aside 3–13–98 Order.*

■ The motions currently pending before the Court regarding the 3–13–98 Order constitute Debtor's third and fourth attempts at setting aside the 3–13–98 Order and the settlement it approves. Debtor alleges that she can now prove fraud on the court by adding her parents' attorney, Michael Knollmeyer, into the equation. She asserts that he fraudulently induced her to sign a blank page which was attached to the 3–13–98 Order, and that she believed she was agreeing to the Settlement Agreement entered into in the adversary proceeding initiated by the Trustee rather than the Compromise Settlement Agreement between the Trustee and Sanford. Debtor also asserts that her request for relief should not be barred by prior court rulings on the issue because the substance of her arguments were never considered. Rather, Debtor contends that the Court and BAP refused to set aside the 3–13–98 Order because it was not timely, and that the Eighth Circuit did not make a ruling on the issues, but dismissed the appeal for failure to respond to the court's show cause order entered April 9, 2002. In sum, Debtor argues that she never had her day in court in the first place, and on top of that, she has a new theory entitling her to relief.

■ Debtor's arguments show that either she does not understand or will not accept principles of finality in litigation. Once an issue is litigated and decided, it cannot be raised again under principles of *res judicata*. *See Spears v. State Farm Fire & Casualty Ins.*, 291 Ark. 465, 468, 725 S.W.2d 835, 837 (1987) ("The purpose of *res judicata* is 'to put an end to litigation by preventing a party who had one fair trial on a matter from relitigating the matter a second time.' ") (citations omitted). Likewise, issues which could have been raised in prior litigation, but were not, are barred as well. The issues raised by Debtor, specifically the alleged inconsistencies between the Settlement Agreement and Compromise Settlement Agreement and the parties' alleged fraud in inducing her to sign the 3–13–98 Order, were previously determined by this Court at least twice. Debtor's first collateral attack on the 3–13–98 Order requested the same relief she seeks now and made the same allegations with the exception of Michael Knollmeyer's involvement. The Court denied Debtor's motion to set aside the 3–13–98 Order, and Debtor chose not to appeal this decision. At that point, her litigation over the 3–13–98 Order was complete. However, Debtor instead brought the same matter before the Court again approximately three years later. Again, Debtor requested the same relief, and the Court denied it.[8] *See In re Martin*, 268

ty to her parents. The Court denied Debtor's motion, and the Court's decision was subsequently upheld on appeal. *See In re Martin*, 268 B.R. at 169; *Martin v. Cox*, 271 B.R. 333. With respect to Debtor's motion to enforce the Settlement Agreement, the Bankruptcy Appellate Panel made three observations: (1) the Debtor lacked standing to sue on behalf of her parents, (2) the Bankruptcy Court lacked jurisdiction to enforce the Agreed Judgment entered by the United States District Court for the Northern District of Texas, and (3) the Debtor's motion should have been brought as an adversary proceeding. Accordingly, Debt-

or's complaint regarding the performance of the Settlement Agreement has previously been decided, and in any case, because the Trustee maintains that he will provide the Martins with original deeds if they still need them, there is no controversy before the Court with respect to these deeds.

8. It is not clear why Debtor's prior motion for relief was not mentioned in the Court's order; it may have been overlooked due to the long delay between motions and the volume of litigation in this case.

B.R. 168. The Court's decision was upheld on appeal, not only on the grounds that Debtor's motion was untimely, but that she failed to show fraud on the court as a matter of law. Debtor then chose not to prosecute her appeal to the Eight Circuit, and her appeal was consequently dismissed. At that point, her litigation over the 3–13–98 Order was finished (once again), and this is true regardless of whether the substantive issues raised by Debtor were considered or not (the BAP did in fact consider the substantive issues raised by Debtor along with the timeliness issue) and regardless of whether the Eighth Circuit reviewed Debtor's appeal. This Court finds that Debtor has in fact had her day in court on at least three occasions now, and because the issues raised by Debtor have been previously decided, it is improper for Debtor to raise them again. *See Arleaux,* 229 B.R. at 185; *Kieffer v. Riske (In re Kieffer–Mickes, Inc.),* 226 B.R. 204, 210 (8th Cir. BAP 1998); *In re Brown,* 152 B.R. 563, 568 (Bankr.E.D.Ark.1993).

■ Furthermore, the fact that Debtor makes a new allegation in her most recent motions regarding Michael Knollmeyer's involvement does not allow her to once again attack the 3–13–98 Order. The principle of *res judicata* operates to bar all issues that were or *could have been* decided during the litigation. *See Spears v. State Farm Fire & Casualty Ins.,* 291 Ark. at 468, 725 S.W.2d 835. Debtor does not allege that she uncovered new evidence that led her to believe Knollmeyer fraudulently induced her to sign the agreed 3–13–98 Order, but rather, that it only recently occurred to her that he was part of the alleged conspiracy against her. Accordingly, she could have made this allegation before but did not, and cannot do so now. Moreover, even if this allegation were considered new evidence, motions for relief from orders based on new evidence can only be brought within one year of entry of the order under Federal Rule of Civil Procedure 60(b)(2), and accordingly, her request for relief based on Knollmeyer's alleged involvement is time-barred.

■ Additionally, Debtor's allegation that Knollmeyer induced her to sign the 3–13–98 Order approving the Compromise Settlement Agreement when she believed it was the Settlement Agreement she was signing ignores a very significant fact. The Settlement Agreement, which Debtor acknowledges agreeing to and signing, clearly refers to the Compromise Settlement Agreement and provides that Debtor will withdraw her objections to the Compromise Settlement Agreement and that she asks the Court to approve it. In other words, the terms of the Settlement Agreement (which Debtor clearly agreed to) require that Debtor agree to an order approving the Compromise Settlement Agreement. The Compromise Settlement Agreement in turn incorporated by reference the Agreed Judgment which was entered in federal court in Texas. Debtor agreed to these settlements by executing the Settlement Agreement, and consequently, she cannot logically assert that she was tricked into signing the 3–13–98 Order. For the same reasons, Debtor's implication that one settlement agreement was fraudulently switched for the other, and that it was only the Settlement Agreement which was put before the Court for approval, makes no sense. As clearly set forth in the facts above, the Trustee moved for approval of the Compromise Settlement Agreement in the case-in-chief and filed a separate motion for approval of the Settlement Agreement in the adversary proceeding. There were two motions for approval of settlement agreements in two different cases, and an order approving each settlement was entered in each case.

Having chosen to proceed *pro se*, Debtor took it upon herself to keep track of her bankruptcy case and the adversary proceedings in which she was involved—she cannot claim fraud because she failed to carefully read the Settlement Agreement to which she agreed, or because she failed to keep track of what was going on in her case-in-chief, namely, the approval of the Compromise Settlement Agreement, a distinct settlement from the Settlement Agreement executed by different parties and approved in a separate adversary proceeding.

Finally, the Court notes that despite Debtor's contentions, the Compromise Settlement Agreement and Agreed Judgment are not inconsistent with paragraph 6 of the Settlement Agreement or the Court's 2–26–97 order that overruled the Martins' objections to the Compromise Settlement Agreement. First, as noted earlier, the order entered by the Court with respect to the Martins' objections simply clarified that the Compromise Settlement Agreement was between the Trustee and Sanford, not the Martins, and that the settlement did not purport to settle the Martins' rights. Second, the Compromise Settlement Agreement and Agreed Judgment do not in fact settle the Martins' rights; rather, the settlement reached by the Trustee and Sanford finds that Debtor fraudulently transferred properties to the Martins. In any case, the Martins' objections to the Compromise Settlement Agreement were overruled by this Court's 2–26–97 order and settlement was subsequently approved by the Court on March 13, 1998.

### B. Petition for Leave to Sue Trustee and His Attorney in State Court

██ Following the hearing on Debtor's petition, Debtor filed a brief with the Court acknowledging that she must obtain leave of the bankruptcy court that appointed the Trustee in order to sue the Trustee and his attorney in another forum for acts done in the Trustee's authority as an officer of the court. This rule is commonly referred to as the "Barton Doctrine" because its rationale was first set out in the case of *Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881). The Barton Doctrine has uniformly been applied in the courts that have considered the issue. *See e.g., Carter v. Rodgers*, 220 F.3d 1249 (11th Cir.2000); *Allard v. Weitzman (In re De-Lorean Motor Co.)*, 991 F.2d 1236 (6th Cir.1993); *Ross v. Strauss*, 231 B.R. 74 (Bankr.W.D.Mo.1999); *In re Krikava*, 217 B.R. 275 (Bankr.D.Neb.1998). The Barton Doctrine also applies to counsel representing a bankruptcy trustee. *See Allard v. Weitzman*, 991 F.2d at 1241 ("We hold, as a matter of law, counsel for trustee, court appointed officers who represent the estate, are the functional equivalent of a trustee, where as here, they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets."). *See also In re Krikava*, 217 B.R. at 278–279. In deciding whether to allow a suit to proceed against a bankruptcy trustee or his counsel, the appointing court may use its discretion but must first consider whether the plaintiff has set forth a *prima facie* case. *See In re Krikava*, 217 B.R. at 279. Once a plaintiff has set forth a *prima facie* case, the court should balance the interests of all parties involved, in deciding whether the suit should proceed in bankruptcy court or another forum. *Id.*

Debtor maintains that she seeks retroactive leave of this Court to sue the Trustee and Dowden for certain official acts, including negligence and breach of fiduciary duty. In support of her claim of negligence and breach of fiduciary duty, Debtor alleges that the Trustee failed to fully investigate Sanford's claims against her in the Texas lawsuit and did not consider her

objections to the proposed settlement agreements with Sanford and Goodstein. The Court finds that Debtor has failed to set forth a *prima facie* case of negligence and breach of fiduciary duty. Both the Sanford and Goodstein settlements were approved by the Court; the order approving the Goodstein settlement was upheld on appeal, and as described in length in this opinion, the order approving the Sanford settlement (*i.e.*, the Compromise Settlement Agreement) was not appealed but has survived numerous collateral attacks launched by Debtor.

Debtor also maintains that she and her parents are suing the Trustee and Dowden for acts taken outside their authority, and as such, need no leave of this Court to sue the Trustee and Dowden in state court on those allegations. Specifically, the Debtor contends that (1) she and her parents are suing the Trustee and Dowden over the execution of the Agreed Judgment which they allege wrongfully stipulated fraud against Debtor and set aside the transfers of real estate from Debtor to her parents in violation of the Court's February 27, 1997 order regarding the Martins' objections to the proposed Compromise Settlement Agreement (which overruled the Martins' objections but clarified that the Compromise Settlement Agreement did not settle issues between the Martins and Sanford), and (2) the Trustee wrongfully confessed a $150,000 judgment against her personally in the Agreed Judgment.

 The Court finds that the acts complained of are in fact within the scope of the Trustee's authority, and as such, leave is required for Debtor or her parents to sue the Trustee or his attorney in another forum. When Debtor filed bankruptcy, all of her property and rights to property became property of the bankruptcy estate, 11 U.S.C. § 541(a), including the pending lawsuits in Texas. "The re-

ceiver or trustee may, with the approval of the court, compromise any controversy arising in the administration of the estate upon such terms as he may deem for the best interest of the estate." *Matter of Ericson,* 6 B.R. 1002, 1006 (D.Minn.1980). Accordingly, the Trustee's settlement of the Texas lawsuits pending when Debtor filed bankruptcy were clearly within the Trustee's duties as bankruptcy trustee. The motion filed by the Trustee for approval of the Compromise Settlement Agreement stated that it was the best net recovery he could get for the estate. The Court subsequently approved the settlement with Debtor's agreement. Again, Debtor's agreement to this settlement was required under the Settlement Agreement that she admits she and her parents willingly executed. Because the Court approved the settlement reached by the Trustee, and the order approving the settlement has been upheld repeatedly despite Debtor's numerous collateral attacks, the Court further finds that Debtor has failed to make a *prima facie* case for relief on these grounds.

 Finally, Debtor ignores the effect of the release she signed in which she agreed not to sue the Trustee, Dowden or Dowden's law firm. "[T]he effect of a valid general release, without an express reservation of rights clause, is an accord and satisfaction of all claims between the immediate parties arising from the incident in question." *See Union Pacific R. Co. v. Mullen,* 966 F.2d 348 (8th Cir.1992). Because Debtor has asserted no basis under which she should be relieved from the release she willingly signed, she cannot sue the Trustee or Dowden over matters within the scope of that release.

Debtor's petition for leave to sue the Trustee and his attorney in state court is yet another collateral attack on the Court's 3–13–98 Order approving the Compromise

Settlement Agreement and Agreed Judgment, and as such, her claims have previously been decided and are now barred. Accordingly, the Debtor is denied leave to sue the Trustee, Dowden or Dowden's law firm in any forum.

## C. Sanctions

 Having found that Debtor's petition for leave to sue and multiple motions to set aside or correct the Court's 3–13–98 Order are meritless, the Court must determine whether Debtor should be sanctioned for her conduct in repeatedly raising the same issues before the Court. Sanctions may be imposed under Federal Rule of Civil Procedure 11 (made applicable to bankruptcy cases by Bankruptcy Rule 9011) or the bankruptcy court's inherit power to sanction persons appearing before it. *See In re Brown*, 152 B.R. 563, 567 (Bankr.E.D.Ark.1993) (*citing Harlan v. Lewis*, 982 F.2d 1255 (8th Cir.1993) and *Citizens Bank & Trust Co. v. Case (In re Case)*, 937 F.2d 1014, 1023 (5th Cir.1991)). Because neither the Trustee nor Dowden filed a separate motion for Rule 11 sanctions in accordance with Rule 11(c)(1)(A), the Court examines whether sanctions are appropriate under its inherit authority to sanction parties appearing before it.[9]

 Before exercising its inherit authority to award sanctions, the Court must find that the party to be sanctioned has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (citations omitted). "Sanctions imposed under the court's inherent power to sanction should serve the dual purpose of vindicating judicial authority without re-

sort to the more drastic sanctions available for contempt of court [and making] the prevailing party whole for expenses caused by his opponent's obstinacy." *In re Kujawa*, 2000 WL 33954570 (Bankr.E.D.Mo. 2000) (citations omitted). Where a party has acted in bad faith warranting such sanctions, an appropriate sanction is the award of legal fees and costs to the prevailing party. *See Chambers v. NASCO, Inc.*, 501 U.S. at 50, 111 S.Ct. 2123.

 The Court finds that Debtor's behavior in filing a petition for leave to sue in state court, a motion to set aside the 3–13–98 Order, and a motion to correct or clarify the 3–13–98 Order, constitutes bad faith. While the Debtor appears to subjectively believe she has been wronged, she has demonstrated enough legal sophistication to understand that she has lost on this issue, yet continues to raise it again and again. She has not only caused the Trustee and Dowden expense and hassle in defending her motions, she has wasted the Court's resources. Not only did she file three motions seeking the same relief in the span of approximately one month, she continues to file briefs, memorandums and other informal documents with the Court reiterating her arguments. As explained in this opinion, the Debtor's arguments are not only barred by principles of *res judicata* and finality of litigation, they defy logic. Accordingly, the Court finds that sanctions must be imposed on Debtor in order to deter her obstinate conduct, to punish her lack of respect for the Court's final orders (and the appellate courts' final orders), and to reimburse the Trustee and Dowden for their legal fees in defending these motions. For these reasons, the Court imposes sanctions on Debtor in favor of the Trustee

---

9. Although Rule 11 sanctions may be appropriate in this case, the Court declines to issue an Order to Show Cause pursuant to Rule 11(c)(1)(B) regarding Rule 11 sanctions because requiring further pleadings and hearings in this matter would clearly be a waste of both the Court's resources as well as the parties' resources.

and Dowden in an amount equal to their reasonable attorneys' fees and costs in defending the motions and petition currently before the Court. The Court will determine the Trustee and Dowden's reasonable attorneys' fees and costs following the filing of affidavits by them in accordance with this Order.

## CONCLUSION

The petition and motions before the Court constitute Debtor's third round (in this Court) of collateral attacks on the 3–13–98 Order. The issues she raises have been decided before on numerous occasions and upheld on appeal. Debtor is barred by principals of *res judicata* and finality of litigation from attacking the Compromise Settlement Agreement and Agreed Judgment approved in the case-in-chief and the Settlement Agreement approved in adversary proceeding number 97–ap–4034. Her allegations of fraud are without merit, and the Court cannot allow Debtor to proceed in state court or any other forum against the Trustee, Dowden or Dowden's former law firm. Furthermore, her behavior in repeatedly requesting the same relief despite numerous decisions against her reflects a profound lack of respect for the Court. She has wasted the Court's resources and caused both the Trustee and Dowden considerable expense and inconvenience. For these reasons, Debtor must be sanctioned to deter her behavior and reimburse the Trustee and Dowden for their legal fees and costs in defending her meritless motions. It is hereby

**ORDERED** that Debtor's Motion to Set Aside 3/13/98 Order and Agreed Judgment filed on October 23, 2002 is **DENIED**; it is further

**ORDERED** that the Debtor's Motion to Correct and Clarify Order filed on November 6, 2002 is **DENIED**; it is further

**ORDERED** that Debtor's Petition requesting authority to pursue a Pulaski County Circuit Court case against certain parties including Trustee Richard L. Cox and Richard L. Cox, P.A., and the Trustee's attorney, James F. Dowden and James F. Dowden, P.A., and Dowden's former law firm, Eichenbaum, Liles & Heister, P.A. is **DENIED**; it is further

**ORDERED** that within 21 days hereof, Debtor Burma Jean Martin and her parents, John Paul and Hazel Victoria Martin, shall file a motion to dismiss Trustee Richard L. Cox and Richard L. Cox, P.A., and the Trustee's attorney, James F. Dowden and James F. Dowden, P.A. and Dowden's former law firm, Eichenbaum, Liles & Heister, P.A. as parties to Case No. 2002–3132, which is filed in the Pulaski County Circuit Court, 12th Division captioned *Burma Jean Martin, John Paul Martin and Hazel Victoria Martin, Plaintiffs v. Michael Knollmeyer, Knollmeyer Law Office, P.A.; Richard L. Cox; Richard L. Cox, P.A.; James F. Dowden; James F. Dowden, P.A.; Eichenbaum, Liles & Heister, P.A.; Brian Sanford; Brian Sanford, P.A.; Stephen Niermann; Niermann and Olivo, P.A., Defendants*; it is further

**ORDERED** that Debtor Burma Jean Martin and her parents, John Paul and Hazel Victoria Martin, are hereby enjoined from filing a legal proceeding, suit, or claim against Mr. Richard L. Cox and Richard L. Cox, P.A., James F. Dowden, James F. Dowden, P.A., and/or Eichenbaum, Liles & Heister, P.A. respecting the alleged facts, transactions or occurrences which are the subject matter of the Complaint filed in the Pulaski County Circuit Court (Case No. 2002–3132), in any forum whatsoever; it is further

**ORDERED** that the Trustee and Dowden's motion for sanctions is **GRANTED**; Trustee and Dowden shall have thirty (30)

days from the entry of this Order to file affidavits with the Court attesting to the legal fees and costs they have incurred to defend the motions at issue in this Order; itemized statements detailing the legal costs and fees incurred shall be attached to such affidavits, and the Court shall review such affidavits and itemized statements and make a determination of the amount of sanctions to be entered against Debtor in favor of Trustee and Dowden.

**IT IS SO ORDERED.**